# EXHIBIT A

 CT Corporation

**Service of Process Transmittal**
10/08/2010
CT Log Number 517413137

||||||||||||||||||||||||||||||||||||||||||||||||||||||||||

**TO:**   Michael Randall
Federal Insurance Company
3445 Peachtree Road NE, Suite 900
Atlanta, GA 30326-1276

**RE:**   **Process Served in Georgia**

**FOR:**   Federal Insurance Company (Domestic State: IN)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Craig Stacks, Pltf. vs. Federal Insurance Company, etc., Dft. |
| **DOCUMENT(S) SERVED:** | Entry of Service, Summons, Complaint, Exhibit |
| **COURT/AGENCY:** | Fulton County Superior Court, GA<br>Case # 2010CV191893 |
| **NATURE OF ACTION:** | Insurance Litigation - Breach of insurance policy for total disability coverage - Seeking not less than $1,000,000.00 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Atlanta, GA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 10/08/2010 at 10:40 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Chad K. Adams<br>Davis Adams, LLC<br>150 E. Ponce de Leon Avenue<br>Suite 320<br>Decatur, GA 30030<br>404-373-8466 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex 2 Day , 791608531758<br>Image SOP<br>Email Notification, Michael Randall mrandall@chubb.com |
| **SIGNED:** | C T Corporation System |
| **PER:** | Terence Hardley |
| **ADDRESS:** | 1201 Peachtree Street,N.E.<br>Atlanta, GA 30361 |
| **TELEPHONE:** | 404-965-3840 |

Page 1 of  1 / LM

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**SHERIFF'S ENTRY OF SERVICE**

Civil Action No.

Date Filed

Attorney's address

**SUPERIOR COURT**

**GEORGIA, FULTON COUNTY**

_____

_____

_____ Plaintiff

Name and Address of Party to be Served

VS.

_____

_____ Defendant

**SHERIFF'S ENTRY OF SERVICE**

**PERSONAL** ☐

I have this day served the defendant _____ personally with a copy of the within action and summons.

**NOTORIOUS** ☐

I have this day served the defendant _____ by leaving a copy of the action and summons at his most place notorious place of abode in this county.

Delivered same into hands of _____ described as follows age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of the defendant.

**CORPORATION** ☐

Served the defendant _____ a corporation by leaving a copy of the within action and summons with _____ in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL** ☐

I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail; First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐

Diligent search made and defendant _____ not to be found in the jurisdiction of this court.

This _____ day of _____ 20_____.

_____ **DEPUTY**

SHERIFF DOCKET _____ PAGE _____

WHITE-CLERK; CANARY-PLAINTIFF; PINK-DEFENDANT

6009 – 201 - 1201



## IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA

### 136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303
### SUMMONS

_CRAIG STACKS_ )  Case No.: _2010CV191893_
)
_____ )
)
Plaintiff, )
)
vs. )
)
_FEDERAL INSURANCE COMPANY_ )
_A member company of the Chubb_ )
_Group of Insurance Companies_ )
Defendant )
)

TO THE ABOVE NAMED DEFENDANT(S):

Your are hereby summoned and required to file with the Clerk of said Court and serve upon plaintiff's attorney, whose name and address is:

_Chad K. Adams, Esq._
_Davis Adams, LLC_
_150 E. Ponce de Leon Ave., Suite 320_
_Decatur, GA 30030_

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. **IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

This _____ _6th_ _____ day of _Oct._ ___, 20 _10_

Honorable Cathelene "Tina" Robinson
Clerk of Superior Court

By _____
Deputy Clerk

To defendant upon whom this petition is served:

This copy of complaint and summons was served upon you _8th_ _Oct._ ___, 20 _10_

_A. Brunk_ _#2293_
Deputy Sherriff

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used

SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

FILED IN OFFICE

OCT - 6 2010

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

CRAIG STACKS,

      Plaintiff,

v.

FEDERAL INSURANCE COMPANY, a
member company of the Chubb Group of
Insurance Companies,

      Defendant.

Civil Action File Number

_____

Jury Trial Demanded

## **COMPLAINT FOR DAMAGES**

    Plaintiff Craig Stacks, through his attorneys, files this Complaint For Damages and respectfully shows the Court as follows:

### **Parties, Jurisdiction, and Venue**

1. Defendant Federal Insurance Company ("Federal") is a corporation organized under the laws of the State of New Jersey whose principal office address is 15 Mountain View Road Number 1615, Warren, New Jersey 07059-6711. Upon information and belief, Federal is a subsidiary of Chubb Corporation and a member of the Chubb Group of Insurance Companies.

2. Federal may be served with process through their registered agent for service of process, CT Corporation System, whose address is 1201 Peachtree Street NE, Atlanta, Georgia, Fulton County 30361.

3. Jurisdiction is proper in this Court because Federal conducts business in the State of Georgia by, among other business activities, selling insurance policies to Georgia residents and insuring Georgia residents.

4. Venue is proper in this Court because Federal's registered agent for service of process maintains an office and is authorized to accept service on behalf of Federal in Fulton County Georgia.

## General Allegations

### The Policy

5. Plaintiff Craig Stacks purchased an Accidental Disability Plan insurance policy number 6475-26-11, which policy was written and issued by Defendant Federal Insurance Company (the "Policy").

6. The material and relevant terms of the Policy are set forth in the Benefit Plan Description for the Policy issued to Mr. Stacks and attached to this Complaint For Damages as Exhibit A.

7. The Policy became effective on August 1, 2000 (Exhibit A, p. 1.), and was in place, effective, and providing insurance coverage to Craig Stacks as of October 10, 2004 and all other times relevant to this Complaint.

8. The Policy required Federal to pay Mr. Stacks a one million dollar ($1,000,000) benefit in the event he suffered an accidental permanent total disability. (Exhibit A, p. 2.)

9. Mr. Stacks met all the requirements to be an Insured Person under the Policy.

10. Mr. Stacks paid all premiums for the Policy.

11. The Policy defines "Accident or Accidental" as "a sudden, unforeseen, and unexpected event which happens by chance, arises from a source external to the Insured Person, is independent of illness, disease or other bodily malfunction and is the direct cause of the loss." (Exhibit A, p. 4.)

12. The Policy defines the "Elimination Period" as "the number of consecutive days of the Primary Person's Permanent Total Disability that must elapse before the Permanent Total Disability benefits become payable." (Exhibit A, p. 4.)

13. The Elimination Period applicable to the Policy is three hundred and sixty-five (365) days.

14. The Policy defines "Permanent Total Disability" to include: "Accidental Bodily Injury that solely and directly causes the Primary Insured Person's . . . Loss of . . . Sight of Both Eyes . . . which solely and directly:

    a.  prevent the Primary Injured Person from engaging in any gainful occupation for which the Primary Injured Person is qualified, or could be qualified, by reason of education, training, experience, or skill; and

    b.  cause a condition which is medically determined by a Physician approved by the Company, to be of continuous and indefinite duration; and

    c.  require the continuous care of a Physician, unless the Primary Insured Person has reached his/her maximum point of recovery." (Exhibit A, p. 4.)

15. The Policy defines "Loss of Sight of Both Eyes" as "the permanent loss of vision in both eyes. Remaining vision in both eyes must be no better than 20/200 using a corrective aid or device, as determined by a Physician." (Exhibit A, p. 5.)

16. The Policy further provides that in the event of Loss of Sight in only one eye, Federal would pay 50% of the "Accidental Loss of Life Benefit Amount" of $5,000, meaning it would pay a benefit of the two-thousand five hundred ($2,500.00) to Mr. Stacks in the event he incurred the Loss of Sight in only one eye only an "accident."

<u>Trauma to Mr. Stacks' Left Eye</u>

17. Prior to October 10, 2004, Mr. Stacks enjoyed normal uncorrected vision in both his left and right eyes.

3

18. Prior to October 10, 2004, Mr. Stacks had been trained, was skilled, and was employed by Georgia Power as a "troubleman," a/k/a a "journeyman linesman," a job which involved evaluating problems with power lines, often at nighttime, and which, by necessity required Mr. Stacks to have adequate vision in both eyes in order to climb poles, read electrical plans, perform repairs, travel to and from jobsites without assistance, and otherwise safely and competently serve in the above-described role with Georgia Power.

19. On October 10, 2004, Mr. Stacks was helping his brother with a home repair in Valdosta, Georgia (on his own time, not as part of his work with Georgia Power), which repair included attempting to nail a piece of plywood to the floor.

20. While Mr. Stacks was attempting to hammer a nail, by chance, the nail accidentally, suddenly and unexpectedly bounced up and into Mr. Stacks' left eye, causing a penetrating traumatic injury to his left eye.

21. Federal has stated in written correspondence that it has "confirmed that Mr. Stacks has sustained the loss of vision in his left eye due to his accident on October 10, 2004."

22. Recognizing that Mr. Stacks was a policyholder in good standing and the Federal disability policy is effective in regard to Mr. Stacks as of October 10, 2004 and is applicable to the accident of October 10, 2004 described in the paragraphs preceding, Federal has offered to pay Mr. Stacks $2,500.00 for the injury to his left eye and, in fact, tendered a Federal Insurance Company check to Mr. Stacks in the amount of $2,500.00.

23. Mr. Stacks has advised Federal in writing that he contends that a payment of $2,500.00 for the injury to his left eye is insufficient and unacceptable under the terms of the Policy because he has lost vision in **both** of his eyes as the direct result of the October 10, 2004 accident, and therefore should be paid by Federal the contractual amount of $1 million for

the continuous and indefinite Loss of Sight in Both Eyes. Accordingly, Mr. Stacks refused the payment of the lesser amount and returned the tendered check to Federal.

24. To date, Federal has refused to tender to Mr. Stacks the $1 million payment for Loss of Sight in Both Eyes from the October 10, 2004, which Loss of Sight in Both Eyes is described further hereinbelow.

25. Following the accident on October 10, 2004, Mr. Stacks went to the Emergency Room at South Georgia Medical Center immediately.

26. During the evening of October 10, 2004, Dr. Scott Petermann performed a surgical repair of a scleral laceration as well as a limited mechanical vitrectomy of Stacks' left eye.

27. Dr. Petermann's principal diagnosis was ocular laceration with prolapse or exposure of intraocular tissue.

28. Dr. Petermann's secondary diagnosis was accident caused by cutting and piercing instrument/object and contusion of eyeball.

29. South Georgia Medical Center discharged Mr. Stacks on October 12, 2004.

30. On October 18, 2004 Dr. Logan Brooks of Southern Vitreoretinal Associates in Tallahasee Florida performed a pars plana vitrectomy on Mr. Stacks' left eye.

31. On December 13, 2004, Dr. Brooks performed a macular puckering of Mr. Stacks' left eye.

32. Since October 6, 2004, Mr. Stacks has had no appreciable vision in his left eye and has been declared by multiple eye doctors to be legally blind in his left eye, including Dr. K.V. Chalam, M.D., Ph.D., MBA, a doctor selected, approved and compensated by Federal to perform an eye evaluation of Mr. Stacks, and who measured Mr. Stacks' best corrected visual acuity as 20/HM (hand motion) in his left eye, meaning that Mr. Stacks measured worse than 20/400 on the eye exam and could only see "hand movements close face."

5

33. The loss of vision in Mr. Stacks' left eye is permanent and of a continuous and indefinite duration.

34. The loss of vision in Mr. Stacks' left eye is solely and directly caused by the accidental, unexpected and sudden traumatic accident that occurred on October 6, 2004.

35. Mr. Stacks has suffered from lost vision in his left eye for more than 365 days.

36. Mr. Stacks is not malingering with respect to his loss of vision in his left eye.

37. Mr. Stacks is not falsely claiming loss of vision in his left eye.

<u>Mr. Stacks' Right Eye</u>

38. In October of 2004—prior to the trauma to Mr. Stacks' left eye—Mr. Stacks had enjoyed normal uncorrected vision in his right eye and, as noted, was a full-time employee by training and skill for Georgia Power, utilizing his healthy and good vision to perform his job.

39. After the October 2004 accident described hereinabove, however, Mr. Stacks began experiencing loss of vision in his right eye as well as his loss of vision in his left eye.

40. By December 21, 2004, Mr. Stacks' vision in his right eye had deteriorated to 20/63 according to Dr. Brooks at South Vitreoretinal Associates.

41. By February 2, 2005, Mr. Stacks' vision in his right eye had further deteriorated to 20/80 or 20/100 according to Dr. Brooks.

42. The deterioration of Mr. Stacks' vision in his right eye continued after February 2, 2005 and by January 10, 2006, Dr. Chalam, the aforementioned physician chosen, approved, retained and paid by Federal to conduct an eye examination of Mr. Stacks, noted that Mr. Stacks' best corrected visual acuity in his right eye was 20/400.

43. Mr. Stacks' best-corrected visual acuity of 20/400 in his right eye as of September 7, 2005, under both the definitions in the Policy issued by Federal as well as generally accepted medical measurements of vision, clearly meets the definition of legal blindness.

44. In addition to his initial report of January 10, 2006, Dr. Chalam provided a supplemental report on January 24, 2006 – a supplement which was requested and paid for by Defendant Federal or its agents – in which Dr. Chalam confirmed that Mr. Stacks was legally blind in BOTH eyes (20/400 in his right eye, and 20/HM (20/Hand Motion) in his left eye).

45. Further, in his January 24, 2006 supplemental report, Dr. Chalam was asked by Federal or its agents "what caused the current visual acuities?"   He responded that the Right Eye was "unexplained visual loss" and the left eye was "S/P penetrating injury – Optic Nerve Head Pallor."

46. In his January 24, 2006 supplemental report, Dr. Chalam was then asked "Are **any** of the above causes [i.e., those "causes" referenced in the paragraph immediately above] due to **any** co-morbid conditions, diseases or diagnoses that contributed to the loss of vision? If so, please explain." Dr. Chalam responded: "Trauma-Penetrating injury in the Left Eye."

47. The response of Dr. Chalam to that question did not identify any other cause of vision loss such as co-morbid conditions, diseases or any other diagnosis in regard to either eye of Mr. Stacks and, on its face, establishes that Dr. Chalam, the doctor approved and retained by Federal to evaluate Mr. Stacks, found only one cause for Mr. Stacks' loss of vision documented in his report:  the traumatic injury that occurred on October 4, 2006.

48. Dr. Chalam was then asked by Federal "Are there **any** causes in question number two [the question set forth in paragraph 45 above] due to trauma or injury?  If so, please explain, and to what extent would those causes be responsible for the visual loss?"   Dr. Chalam responded:  "Penetrating injury with optic nerve head pallor is responsible for the visual loss."   Dr. Chalam did not identify any other cause whatsoever for the "loss of vision" that he documented in regard to Mr. Stacks, which included documented "loss of vision" in **both** of Mr. Stacks' eyes.

49. In both his January 10, 2006 and January 24, 2006 reports, Dr. Chalam, a doctor approved and selected by Federal, did not identify any definite duration for Mr. Stacks' loss of vision in his right eye, nor did he identify any point in time or period at which he expected that Mr. Stacks would regain vision in his right eye.

50. In short, the reports of Dr. Chalam, a doctor approved by Federal, establish and support that Mr. Stacks' loss of vision in his right eye (as well as his left eye) are indefinite and continuous.

51. As of the date of the filing of this Complaint For Damages, Mr. Stacks continues to be legally blind in his right eye (and left eye), and his blindness in that eye (as well as his left eye) has been continuous up to this point, further supporting the conclusion that his loss of vision in both eyes is permanent, indefinite and continuous.

52. The accidental trauma to and loss of vision in Mr. Stacks' left eye is the direct, indirect, and proximate cause of the loss of vision in Mr. Stacks' right eye.

53. Mr. Stacks has suffered from lost vision in his right eye for more than 365 days.

54. Mr. Stacks is not malingering with respect to the loss of vision in his right eye.

55. Mr. Stacks is not falsely claiming a loss of vision in his right eye.

<u>Mr. Stacks' Permanent Total Disability</u>

56. The accidental trauma Mr. Stacks suffered on October 6, 2004 is the direct, indirect, and proximate cause of the loss of vision Mr. Stacks has suffered in both his left and right eyes.

57. The loss of vision Mr. Stacks has suffered in both the left and right eyes has left him with no better than 20/200 vision in either eye using a corrective aid or device as determined by a Physician.

58. The loss of vision Mr. Stacks has suffered in both the left and right eyes is permanent and of a continuous and indefinite duration.

8

59. The loss of vision Mr. Stacks has suffered in both the left and right eyes has prevented Mr. Stacks from engaging in any gainful occupation for which he is qualified by reason of his education, training, experience, and skill.

60. Specifically, Mr. Stacks was trained, qualified and skilled to work as a laborer with Georgia Power, a job which requires visual acuity to perform.  Because he is now legally blind in both eyes, he is unable to perform any position in his area of training or qualification.

61. The loss of vision Mr. Stacks has suffered in both the left and right eyes has resulted in continuing evaluation and care of various Physicians, but despite all evaluations to date, Mr. Stacks has, upon information and belief, reached his maximum point of recovery.

62. The loss of vision Mr. Stacks has experienced is a Permanent Total Disability as the Policy defines that term, which entitles him to a payment of $1 million under the Federal policy, not merely the $2,500.00 which was tendered to him by Federal.

### Count I - Breach of Contract

63. Plaintiff incorporates by reference paragraphs 1 through 62.

64. Mr. Stacks suffered an accidental trauma that directly, indirectly, and proximately caused a loss of vision.

65. The accidental trauma to Mr. Stacks' left eye is the direct, indirect, and proximate cause of the loss of vision in Mr. Stacks' right eye.

66. As the direct, indirect, and proximate result of having lost vision in both eyes, Mr. Stacks has a Permanent Total Disability as the Policy defines that term.

67. Mr. Stacks has suffered an accidental permanent total disability more than three hundred and sixty-five days.

68. As a result of Mr. Stacks having a Permanent Total Disability as the Policy defines that term, Federal has a duty under the Policy to pay Mr. Stacks one million dollars.

9

69. Federal breached its duty under the terms of the Policy to Mr. Stacks when it refused to pay him one million dollars even though he suffered a Permanent Total Disability (the Loss of Vision in Both Eyes) , and instead offered only to pay him $2,500.00 for the loss of vision in one eye from that accident.

70. Federal's failure to pay Mr. Stacks one million dollars under the terms of the Policy constitutes a breach of its contract with him.

71. As a direct, indirect, and proximate result of Federal's breach of the Policy, Mr. Stacks has suffered damages to be proven at trial in the amount of the Policy for Loss of Sight in Both Eyes, that amount being one million dollars, as well as any other damages adjudged to be due and owing to Mr. Stacks.

### Count II – Specific Performance

72. Plaintiff incorporates by reference paragraphs 1 through 62.

73. The terms of the Policy are clear, distinct, and definite.

74. The terms of the Policy and the Benefit Plan Description are certain, fair, and for adequate consideration.

75. Neither Mr. Stacks nor Federal could reasonably misunderstand the Policy.

76. The terms of the Policy clearly, distinctly, and definitely required Federal to pay Mr. Stacks a one million dollar benefit if he suffered a Permanent Total Disability.

77. Mr. Stacks has suffered and currently suffers from a Permanent Total Disability as the Policy and the Benefit Plan Description define that term.

78. Federal has not paid Mr. Stacks the one million dollar benefit required by the clear, distinct, and definite terms of the Policy and the Benefit Plan Description.

79. As a direct, indirect, and proximate result of Federal's failure to perform its obligation to pay a one million dollar benefit to Mr. Stacks pursuant to the terms of the Policy and the Benefit

10

Plan Description, Mr. Stacks respectfully asks this Honorable Court to exercise its equitable power and enter an Order requiring Federal to perform its obligation and pay Mr. Stacks the one million dollar benefit called for in the Policy and Benefit Plan Description.

## Conclusion

WHEREFORE, Plaintiff prays as follows:

(a)     That he have service of process and summons in terms of law;

(b)     That he have trial by jury;

(c)     That he have judgment against Defendants an amount to be determined at a trial by jury in an amount not less than one million dollars;

(d)     That this Court enter an Order requiring Federal to perform its obligation to pay him a one million dollar benefit;

(e)     That all costs of this action be taxed against Defendants; and,

(f)     That he have any other relief as is appropriate and authorized by law.

Respectfully submitted this 6th day of October 2010.

DAVIS ADAMS, LLC

Chad K. Adams
Georgia Bar No. 141267

150 E. Ponce de Leon Ave., Ste. 320
Decatur, Georgia 30030
Telephone: 404-373-8466
Facsimile: 404-373-8455

CONLEY GRIGGS, LLP

Georgia Bar No. 181080

4400 Peachtree Road NE
Atlanta, GA 30319
Telephone: 404-467-1155
Facsimile: 404-467-1166

*Attorneys for Plaintiff*

11

Exhibit "A"

03/28/2006  11:19   7704776380              MILLARANDMIXON                    PAGE  03/23

# Accidental Disability Plan
## *from* American Express

---

### Benefit Plan Description

### SECTION                                                                    PAGE

*$1 Million Accidental Permanent Total Disability Benefit*

**Certificate of Insurance Declarations**                                       1
Defines Insured Person and lists benefit amounts for your Permanent Total Disability Lump
Sum Benefit and your Accidental Loss of Life Benefit.

**Certificate of Insurance Contract**                                           2
Sections I – VII (pages 2-8) contain the major provisions of your Permanent Total Disability
Lump Sum and Accidental Loss of Life Benefits. It describes the coverage, definitions, exclusions,
limitations and payment should you suffer a loss under this plan.

**Emergency Accident and Sickness Medical Expense Benefit**                     9
Contains the major provisions of your Emergency Accident and Sickness Medical Expense Benefit.
It describes the coverage, definitions, exclusions, limitations and payment terms under this plan.

**Medical Care Coordination Benefit**                                           12
Includes a description of this service.



Cards

Note: Read carefully and keep with your valuable documents.

Cards.AE.PTD.$1MFX.0404.ILT

## Accidental Permanent Total Disability Benefit

---

### Certificate of Insurance
### Declarations

**PLEASE READ YOUR CERTIFICATE CAREFULLY**

*Issued by*
*Federal Insurance Company*
*A member company of the*
*Chubb Group of Insurance Companies*
*15 Mountain View Road*
*P.O. Box 1615*
*Warren, NJ 07061*

*Policyholder's Name and Mailing Address:*
*Bank of Newport, as Trustee for G.A.R.D. Trust*
*for the Account of HealthExtras/American Express*
*P.O. Box 430*
*Newport, RI 02840*

| | |
|---|---|
| *Policy Number* | *6473 26 11* |
| *Effective Dates* | *August 1, 2000* |
| *Producer* | *The Sidover Group, Inc.* |
| | *400 Post Avenue, Suite 108* |
| | *Westbury, NY 11590-2226* |

> Effective April 1, 2004, JLT Services Corporation replaced
> The Sidover Group, Inc. as the Producer/Broker of Record:
> JLT Services Corporation
> 11 Cornell Road
> Latham, NY 12110

This description of coverage contains the major provisions of this policy. It describes the coverage, exclusions, limitations and payment of loss.

Words and phrases that appear in bold print have special meanings and are defined in the Definitions section(s) of this description of coverage. Defined terms include the plural.

Throughout this description of coverage the words "you" and "your" refer to the Policyholder shown in the Declarations of this policy. The words "we", "us" and "our" refer to the Company providing this insurance.

Whenever the term "Primary Insured Person" is used in the Permanent Total Disability Lump Sum Endorsement, the term includes Covered Person.

---

### Section I – Policy Period

From August 1, 2000          To: Until Terminated
12:01 A.M. standard time at the Policyholder's address shown above.

### Section II – Insured Persons

The following are the Insured Persons under this policy:

| Class | Description |
|---|---|
| 1E | All eligible Accountholders of the Policyholder who have elected individual coverage and pay the required premium. |
| 1F | All eligible Accountholders of the Policyholder and their spouses for whom the Accountholder elects individual plus spouse coverage and pays the required premium. |

If a person has coverage for a specific Loss as both an Insured Person and a Primary Insured Person, only one Benefit Amount applicable to that Loss will be paid. If one Benefit Amount is larger, the larger Benefit Amount will be paid and premium for the lesser Benefit Amount will be refunded. If the Benefit Amounts are equal, one Benefit Amount will be paid and premium for the remaining Benefit Amount will be refunded.

Whenever the term "spouse" is used in the policy, the term includes Domestic Partner. The Primary Insured Person and the Domestic Partner agree to provide additional information and documentation as may be required to substantiate the relationship and eligibility for coverage under this policy.

### Section III – Hazard(s)

*24 Hours Business and Pleasure*

24 Hour Business and Pleasure Hazard means all circumstances, subject to the terms and conditions of this policy, to which the Insured Person may be exposed anywhere in the world.

Stacks, Craig Documents Client218

## Section IV – Benefit Amounts

The following are Losses covered and subject to the Multiple Losses Maximum Payment provision.

### A.  PERMANENT TOTAL DISABILITY LUMP SUM

| Benefit Amount | Elimination Period |
|---|---|
| $1,000,000 | 365 days |

#### Permanent Total Disability Lump Sum

If Accidental Bodily Injury causes the Primary Insured Person to have a Permanent Total Disability that is continuous during the period for which Permanent Total Disability Benefit Amounts are payable, after the Elimination Period we will pay the Permanent Total Disability Lump Sum Benefit Amount shown in the Declarations.

Permanent Total Disability coverage does not apply to persons age seventy (70) or older on the date of the Loss.

### B.  ACCIDENTAL LOSS OF LIFE BENEFIT AMOUNTS

The following are Loss of Life Benefit Amounts for each Class:

| Class | Benefit Amounts* |
|---|---|
| 1E | $5,000 |
| 1F | $5,000 |

*$1,000 if date of Accident is prior to April 1, 2003

#### ACCIDENTAL LOSS OF LIFE BENEFIT AMOUNTS

The following are the Accidental Loss Benefit Amounts:

| Accidental: | Percent of Loss of Life Benefit Amount |
|---|---|
| Loss of Life | 100% |
| Loss of Speech and Loss of Hearing | 100% |
| Loss of Speech and Loss of One of: Hand, Foot or Sight of an Eye | 100% |
| Loss of Hearing and Loss of One of: Hand, Foot or Sight of an Eye | 100% |
| Loss of Both Hands, Loss of Both Feet, Loss of Sight of Both Eyes or a Combination of any two of a Loss of Hand, a Loss of Foot or Loss of Sight of an Eye | 100% |
| Loss of One Hand, Loss of One Foot or Loss of Sight of an Eye | 50% |
| Loss of Speech or Loss of Hearing | 50% |
| Loss of Thumb and Index Finger of the Same Hand | 25% |

---

## Certificate of Insurance
### Contract

## Section I – Coverage

We will pay the applicable Benefit Amount if an Accident results in a Loss not otherwise excluded. The Accident must result from a covered Hazard and occur while this policy is in force. The Loss must occur within one (1) year of the Accident.

#### Effective Date of Individual Coverage

Coverage for the Insured Person becomes effective on the latest of:
1) the effective date of this policy; or
2) the beginning of the period for which premium is paid for the Insured Person; or
3) the date on which a person meets the definition of Insured Person.

#### Termination of Individual Coverage

Coverage for the Insured Person automatically terminates on the earliest of:
1) the termination date of this policy; or
2) the expiration of the period for which premium has been paid for the Insured Person; or
3) the date on which a person no longer meets the definition of Insured Person.

Stacks, Craig Documents Client219

## Section II – Extensions of Coverage

Extensions of Coverage are subject to the provisions of Section I of the Contract, Coverage, and all other policy terms and conditions:

### Disappearance

If the Insured Person has not been found within one (1) year of the disappearance, stranding, sinking, wrecking or breakdown of any conveyance in which the Insured Person was covered as an occupant at the time of the Accident, it will be assumed, subject to all other terms of this policy, that the Insured Person has suffered Loss of Life covered under this policy.

### Exposure

If an Accident resulting from a Hazard causes the Insured Person to be unavoidably exposed to the elements and as a result of such exposure the Insured Person has a Loss, such Loss will be covered under this policy.

## Section III – Multiple Losses Maximum Payment

For those Losses identified in the Declarations as subject to the Multiple Losses Maximum Payment provision, if an Insured Person has multiple Losses as the result of one Accident, we will pay only the single largest Benefit Amount applicable.

## Section IV – Territory

This insurance applies worldwide.

## Section V – Exclusions

Permanent Total Disability coverage does not apply to persons age seventy (70) or older on the date of the Loss.

### Aircraft Owned, Leased or Operated

This insurance does not apply to Loss occurring while an Insured Person is in, entering, or exiting any aircraft owned, leased or operated by the Policyholder or on behalf of the Policyholder.

### Aircraft Pilot or Crew

This insurance does not apply to Loss occurring while an Insured Person is in any aircraft while acting or training as a pilot or crew member.

This exclusion does not apply to passengers who temporarily perform pilot or crew functions in a life-threatening emergency.

### Criminal Activity

This insurance does not apply to Loss occurring while the Insured Person is committing a criminal act, or attempting to commit a criminal act.

### Disease or Illness

This insurance does not apply to Loss caused by or resulting from an Insured Person's emotional trauma, mental or physical illness, disease, pregnancy, childbirth or miscarriage, bacterial or viral infection, or bodily malfunctions.

This exclusion does not apply to Loss resulting from an Insured Person's bacterial infection caused by an Accident or from Accidental consumption of a substance contaminated by bacteria.

### Intoxication and Narcotic Influence

This insurance does not apply to Loss caused by or resulting from the Insured Person being intoxicated, as defined by the laws of the jurisdiction where the Loss occurred, or under the influence of any narcotic unless taken on the advice of a Physician and used in accordance with the prescription.

### Military Service

The insurance does not apply to Loss occurring while the Insured Person is participating in military service duties of any state, country or international authority.

### Parachute Jumping

This insurance does not apply to Loss caused by or resulting from the Insured Person participating in parachute jumping from an aircraft.

### Pre-Existing Condition

This insurance does not apply to Loss caused by or resulting from a Pre-Existing Condition. A Pre-Existing Condition means illness, disease or Accidental injury of the Insured Person for which medical advice, diagnosis, care or treatment was recommended or received within the six (6) months prior to the effective date of Insured Person's coverage under this policy. A Pre-Existing Condition will not be excluded after twelve (12) months has elapsed from the effective date of the Insured Person's coverage.

Stacks, Craig Documents Client220

*Professional Sporting Activity*

This insurance does not apply to a Loss caused by or resulting from the Insured Person participating in any professional sporting activity for which the Insured Person received a salary or prize money as a substantial part of their income.

*Suicide or Intentional Injury*

This insurance does not apply to suicide, attempted suicide or loss that is intentionally self-inflicted.

*War*

This insurance does not apply to Loss caused by or resulting from a declared or undeclared War.  Declared or undeclared War does not include acts of terrorism.

## Section VI – Definitions

*Accident or Accidental*

Accident or Accidental means a sudden, unforeseen, and unexpected event which happens by chance, arises from a source external to the Insured Person, is independent of illness, disease or other bodily malfunction and is the direct cause of loss.

*Accidental Bodily Injury*

Accidental Bodily Injury means bodily injury, which is Accidental and the direct cause of a Loss.

*Accountholder(s)*

Accountholder(s) means a holder, authorized by the Policyholder, of a valid credit card account, bank account, or mortgage with the Policyholder.

*Benefit Amount*

Benefit Amount is the amount shown in Section IV of the Declarations applicable to the Loss:
1)   at the time of the Accident; and
2)   to the Insured Person who has the Loss.

*Class*

Class means the persons described in Section II of the Declarations, Insured Persons.

*Company*

Company means Federal Insurance Company.

*Dependent Child or Children*

Dependent Child or Children means those children, including adopted children and those children placed for adoption, who are primarily dependent upon the Insured Person for maintenance and support, and who are:

1)   under the age of nineteen (19) and reside with the Insured Person; or
2)   beyond the age of nineteen (19), permanently mentally or physically challenged, and incapable of self-support; or
3)   under the age of twenty-five (25) and classified as full-time students at an institution of higher learning.

Coverage only applies for the Class(es), Hazard(s), Benefit Amounts and Losses that are specifically indicated as covered.

*Domestic Partner*

Domestic Partner means a person designated in writing at enrollment by the Primary Insured Person, who is at least eighteen (18) years of age, and who throughout the past twelve (12) months:

1)   has been in a committed relationship with the Primary Insured Person; and
2)   has been the Primary Insured Person's sole spousal equivalent; and
3)   has resided in the same household as the Primary Insured Person; and
4)   has been jointly responsible with the Primary Insured Person for each other's financial obligations,

and who intends to continue the relationship described above indefinitely.

*Elimination Period*

Elimination Period means the number of consecutive days of the Primary Insured Person's Permanent Total Disability that must elapse before Permanent Total Disability benefits become payable.  The Elimination Period is shown in the Declarations.  Permanent Total Disability benefits are not payable, nor do they accrue, during an Elimination Period.

RECEIVED TIME  MAR. 28.  10:14AM          4        PRINT TIME  MAR. 28.  10:48AM

Stacks, Craig Documents Client221

*Hazard*

Hazard means the covered circumstances for which this insurance is provided as stated in Section III of the Declarations and described in the Hazard form.

*Insured Person*

Insured Person means a person described as a Class member in Section II of the Declarations:
1)  who elects coverage; or
2)  for whom coverage is elected,
and on whose behalf premium is paid.

*Loss of Use (Permanent Total Disability)*

Loss of Use means the permanent and total inability of the specified body part to function, as determined by a Physician.

*Permanent Total Disability*

Permanent Total Disability means Accidental Bodily Injuries that solely and directly causes the Primary Insured Person's:

Loss of:
Use of One Hand and One Foot; or
Use of Both Hands or Both Feet; or
Sight of Both Eyes; or
Hearing of Both Ears; or
Speech, which solely and directly:

1)  prevent the Primary Insured Person from engaging in any gainful occupation for which the Primary Insured Person is qualified, or could be qualified, by reason of education, training, experience, or skill; and
2)  cause a condition which is medically determined by a Physician, approved by the Company, to be of continuous and indefinite duration; and
3)  require the continuous care of a Physician, unless the Primary Insured Person has reached his/her maximum point of recovery.

Loss of Use of Hand means the Loss of Use at or above the knuckle joints of at least four (4) fingers on the same hand or at least three (3) fingers and the thumb on the same hand.

Loss of Use of Foot means the Loss of Use of the foot at or above the ankle joint.

Loss of Sight of Both Eyes means the permanent loss of vision in both eyes. Remaining vision in both eyes must be no better than 20/200 using a corrective aid or device, as determined by a Physician.

Loss of Hearing of Both Ears means the permanent, irrecoverable and total deafness of both ears to the extent that the deafness cannot be corrected by any aid or device, as determined by a Physician.

Loss of Speech means the permanent, irrecoverable and total loss of the capability of speech without the aid of mechanical devices, as determined by a Physician.

*Loss*

Loss means the types of Accidental Bodily Injuries listed in Section IV of the Declarations for which this policy provides coverage.

Loss of Foot means the complete severance through or above the ankle joint. We will consider it a Loss of Foot even if the foot is later reattached.

Loss of Hand means complete severance through or above the knuckle joints of at least 4 fingers on the same hand or at least 3 fingers and the thumb on the same hand. We will consider it a Loss of Hand even if the fingers and/or thumb are later reattached.

Loss of Hearing means the permanent, irrecoverable and total deafness of both ears to the extent that the deafness cannot be corrected by any aid or device, as determined by a Physician.

Loss of Life means death, including clinical death, determined by the local governing medical authorities.

Loss of Sight of an Eye means the permanent loss of vision in one eye. Remaining vision in that eye must be no better than 20/200 using a corrective aid or device, as determined by a Physician.

Loss of Speech means the permanent, irrecoverable and total loss of the capability of speech without the aid of mechanical devices, as determined by a Physician.

Loss of Thumb and Index Finger means complete severance through or above the knuckle joints of the thumb and index finger of the same hand. We will consider it a Loss of Thumb and Index Finger even if one or both are later reattached.

Physician means a person who is licensed as a medical doctor or a doctor of osteopathy under the laws of the jurisdiction in which treatment is given and who is qualified to provide the medical treatment. Physician does not include a family member of the Insured Person, a social worker or a physical therapist.

Policyholder means the entity identified in the Insuring Agreement who is responsible for the collection and remittance of premium.

Primary Insured Person means an Insured Person who:
1)  is offered coverage by the Policyholder and elects coverage under the policy; and
2)  pays the premium for the coverage selected.

Stacks, Craig Documents Client222

War means:
1)   hostilities following a declaration of War by a government authority;
2)   if there is no declaration of War, then armed, open and continuous hostilities between two countries; or
3)   armed, open and continuous hostilities between two factions, each in control of territory, or claiming jurisdiction over the site of the area of hostility.

## Section VII – Common Policy Conditions

### Absolute Assignment

The Insured Person's rights under the policy may be irrevocably assigned.  However, we will only recognize an assignment if the Insured Person has given us prior written notice and has our written acknowledgment of this assignment.

### Arbitration

In the event of a dispute under the policy, either we, the Insured Person, or in the event of Loss of Life, the Insured Person's beneficiary may make a written demand for arbitration.  In that case, we and the Insured Person, or in the event of Loss of Life, the Insured Person's beneficiary, will each select an arbitrator.  The two arbitrators will select a third.  If they cannot agree within fifteen (15) days, either we or the Insured Person, or in the event of Loss of Life, the Insured Person's beneficiary, may request that the choice of arbitrator be submitted to the American Arbitration Association.  The arbitration will be held in the state of the Insured Person's principal residence.

### Beneficiary

The Loss of Life benefit will be paid to the beneficiary designated by the Insured Person.  This choice must be in writing and filed with the Policyholder.

If the Insured Person has not chosen a beneficiary or if there is no beneficiary alive when the Insured Person dies, we will pay the Benefit Amount to the first surviving party in the following order:

1)   the Insured Person's spouse;
2)   in equal shares to the Insured Person's surviving children;
3)   in equal shares to the Insured Person's surviving parents;
4)   in equal shares to the Insured Person's surviving brothers and sisters;
5)   to the Insured Person's estate.

All other Benefit Amounts are paid to the Insured Person, unless otherwise directed by the Insured Person or the Insured Person's designee.

### Beneficiary Changes

The Insured Person, and no one else, has the right to change the beneficiary.  The Insured Person does not need the consent of anyone to do so.  Changes must be in writing and filed with the Policyholder.  We do not assume any responsibility for the validity of the changes.

### Cancellation, Nonrenewal and Grace Period

The Policyholder may cancel this policy or any of its individual coverages by sending us written notice stating when cancellation is to take effect.  The effective date of cancellation may not be earlier than the date notice is mailed or transmitted.

We may cancel this policy or any of its individual coverages if the Policyholder fails to pay the premium within the grace period of thirty-one (31) days after the premium due date, except for the first premium due during this policy term.  We will send written notice stating the effective date of cancellation, which will be no earlier than thirty-one (31) days from the premium due date.

The Policyholder is entitled to a grace period of thirty-one (31) days for the payment of premium due.  This policy will continue in force during the grace period.  The grace period does not apply to the first premium payable during this policy term.  Failure to pay the first premium on or before the due date will immediately terminate this policy as of inception.  We are not required to provide notification of such termination.

We may cancel or nonrenew this policy for reasons other than non-payment of premium by sending written notice at least forty-five (45) days before the Anniversary Date shown in the Insuring Agreement.

We will send notice of cancellation or nonrenewal to the Policyholder at its last known address.  If the notice is mailed, proof of mailing will be considered proof of cancellation or nonrenewal.  The Policyholder is required to provide notice of cancellation to all Insured Persons.

The Primary Insured Person may cancel the insurance described in this policy by returning to us or our authorized representative the Benefit Plan Description with a written request for cancellation within ninety days of receipt.  The premium will be fully refunded.

### Claim Forms

When we receive notice of a claim we will send the Insured Person or the Insured Person's designee, within fifteen (15) days, forms for giving us Proof of Loss.  If the Insured Person or the Insured Person's designee does not receive the forms, the Insured Person or the Insured Person's designee should send us a written description of the Loss.  This written description should include information detailing the occurrence, type and extent of the Loss for which claim is made.

### Claim Notice

Written Claim Notice must be given to us or any of our appointed agents or brokers within twenty (20) days after the occurrence or commencement of any Loss covered by this policy or as soon as reasonably possible.  Notice must include enough information to identify the Insured Person and Policyholder.  Failure to give Claim Notice within twenty (20) days will not invalidate or reduce any claim if notice is given as soon as reasonably possible.

Stacks, Craig Documents Client223

### Claim Payment

For benefits payable involving disability, we will pay the Insured Person or beneficiary the applicable Benefit Amount no less frequently than monthly during the continuance of the period for which we are liable. All payments by us are subject to receipt of written Proof of Loss.

For all benefits payable under this policy except those for disability, we will pay the Insured Person or beneficiary the applicable Benefit Amount within sixty (60) days after we receive a complete Proof of Loss if the Insured Person and Policyholder have complied with all the terms of this policy.

### Claim Proof of Loss

For claims involving disability, written Proof of Loss must be given to us within thirty (30) days after commencement of the period for which we are liable. Subsequent written proof of the continuance of such disability must be given to us at such intervals as we may reasonably require.

Failure to give written Proof of Loss within these timeframes will not invalidate or reduce any claim if notice is given as soon as reasonably possible, and in no event, except in cases where the claimant lacks legal capacity, later than one (1) year after the deadline to submit written Proof of Loss.

For all claims except those involving disability, written Proof of Loss must be given to us within ninety (90) days after the date of Loss, or as soon as reasonably possible.

### Claim and Self Cooperation

In the event of a claim under this policy, the Policyholder, the Insured Person and the beneficiary, if applicable, must fully cooperate with us in handling of the claim, including, but not limited to, the timely submission of all medical and other reports, and full cooperation with all physical examinations and autopsies that we may require.

If the Policyholder is sued in connection with a claim under this policy, the Policyholder will immediately give us copies of every demand, notice and summons which the Policyholder receives relating to the suit. The Policyholder must fully cooperate with us in the handling of the suit. At our request, the Policyholder will assist in the settlement or conduct of the suit. The Policyholder or its designee will attend all hearings and trials and assist in giving evidence and securing the attendance of witnesses. The Policyholder must not, except at its own expense, voluntarily make any payment or assume any obligation in connection with the suit without our prior written consent.

### Compliance by Policyholder and Insured Person

We have no duty to provide coverage under this policy unless the Policyholder and the Insured Person have fully complied with all the terms and conditions of this policy.

### Conformance With Statutes

Any terms of the policy which are in conflict with the applicable statutes, laws or regulations of the state or territory in which the policy is issued are amended to conform to such statutes, laws or regulations.

### Conversion Privilege

In the event the Insured Person's coverage under the policy ceases for any reason other than termination of this policy, the Insured Person is eligible for an individual accident policy.

To convert to an individual accident policy, the Insured Person must submit to us or our authorized representative:
1)  a complete, written application; and
2)  the required premium
for the individual accident policy within thirty-one (31) days after the Insured Person's coverage ended.

The individual accident policy will:
1)  be issued without evidence of insurability;
2)  provide insurance only for Loss of Life and dismemberment that is most similar to, but not greater than, the terminated coverage;
3)  not pay for the same Loss for which benefits have already been paid under the policy;
4)  provide a Benefit Amount for the Insured Person which will be the lesser of the following:
    a)  the Insured Person's Benefit Amount under the policy; or
    b)  $100,000; and
5)  be subject to current rates for age and Class at the time of conversion.

### Examination Under Oath

We have a right to examine under oath, as often as we may reasonably require, the Insured Person, the Policyholder or the beneficiary. We may also require the Insured Person, the Policyholder or the beneficiary to provide a signed description of the circumstances surrounding the Loss and their interest in the Loss. The Insured Person, the Policyholder and the beneficiary will also produce all records and documents requested by us, and will permit us to make copies of such records or documents.

### Inadvertent Error

The insurance provided under the policy will not be prejudiced by the failure on the part of the Policyholder to transmit reports, collect and remit premium or comply with any of the terms and conditions of the policy when such failure is due to inadvertent error or clerical mistake.

Stacks, Craig Documents Client224

03/28/2006  11:13   7724776390        MILLARANDMIXON            PAGE  12/23

### Legal Action Against Us

No legal action may be brought to recover on the policy until sixty (60) days after we have been given complete, written Proof of Loss. No such action may be brought after three (3) years from the time complete, written Proof of Loss is required to be given. No such action may be brought unless there has been full compliance with all of the terms of the policy.

In no case will we be liable for benefits that are not payable under the terms of the policy or that exceed the applicable Benefit Amounts.

### Liberalization

If we adopt any changes:
1)   within forty-five (45) days prior to the effective date shown in the Insuring Agreement; or
2)   during the policy period
which could broaden this insurance without an additional premium charge, the Insured Person will automatically receive the benefit of the broadened coverage.

### Physical Examination and Autopsy

We have the right to have the Insured Person examined by a Physician approved by us, as often as reasonably necessary while a claim is pending. We may also have an autopsy done by a Physician, unless prohibited by law. Any examinations or autopsies that we require will be done at our expense.

### Premium Payment

The Policyholder will collect and remit to us all premiums due under the policy, subject to the grace period specified in the Cancellation, Nonrenewal and Grace Period condition.

Premium is auditable. We will calculate the earned premium for each audit Reporting Period based on the applicable rates and exposures shown in the Premium Summary. The Policyholder must keep records of the information we need to calculate the premium and send us copies of those records for each Reporting Period.

The earned premium will be computed on a pro-rata basis. Any unearned premium will be remitted to the Policyholder for return to the Primary Insured Person as soon as practicable.

### Premium Rate Changes

We may change the premium rates for the policy on the Anniversary Date. We will give the Policyholder at least forty-five (45) days prior written notice.

### Statements by Policyholder or Insured Person and Incontestability

We will not use any statements, except fraudulent misstatements, made by the Policyholder or an Insured Person to void the insurance or reduce benefits payable under the policy, or to otherwise contest the validity of the policy, unless such statements are contained in a written document signed by the Policyholder or the Insured Person. If we rely on such statements for this purpose, we will provide a copy of the written document to the Policyholder, the Insured Person, or the Insured Person's designee or beneficiary, as appropriate.

We will consider all statements made by the Policyholder and the Insured Person to be representations and not warranties.

Except for nonpayment of premium, we will not use statements made by the Policyholder or an Insured Person regarding insurability to contest the validity of the policy when the statements are made more than two (2) years after the policy has been in force during the Insured Person's lifetime.

Nothing in this section will preclude us from asserting at any time defenses based upon a claimant's ineligibility for coverage under the policy, or upon any other policy provision or condition.

### Titles of Paragraph

The titles of the various paragraphs of this certificate and any endorsements attached are inserted solely for the convenience of reference and do not limit or affect in any way the provisions to which they refer.

### Workers' Compensation

The benefits payable under the policy are not in lieu of and do not affect any requirement for Workers' Compensation insurance.

Please note that the Benefit Plan Description is not the Master Policy. Actual coverage is subject to the language of the Master Policy issued.

DTO-44-0485

RECEIVED TIME  MAR. 28.  10:14AM      8      PRINT TIME  MAR. 28.  10:47AM

Stacks, Craig Documents Client225

## Emergency Accident and Sickness Medical Expense Benefit

### ISSUED BY

Virginia Surety Company, Inc. under the Travel Protection Policy Number HTP00137

### DESCRIPTION OF COVERAGE

**Schedule of Coverages**                                   **Maximum Annual Benefits Per Person**

Emergency Accident and Sickness Medical Expense

    Benefit payable with other insurance          Up to $500 per person; maximum annual benefit per family - $2,500

    Benefit payable without other insurance        Up to $100/day per person; maximum annual benefit of $500
                                       per person and $2,500 per family

### Emergency Accident and Sickness Medical Expense

The Company will pay benefits, up to the maximum shown on the Schedule of Coverages, if as the result of an Accidental Injury or Sickness while on Your Trip, You incur necessary covered medical expenses for Emergency Treatment. Covered medical expenses are necessary services and supplies, which are recommended by the attending Physician. They include the services of a legally qualified Physician; charges for Hospital confinement and use of operating rooms; charges for anesthetics (including administration), x-ray examinations or treatments, and laboratory tests; ambulance service, drugs, medicines, prosthesis and therapeutic services and supplies. The Company will not pay benefits in excess of the reasonable and customary charges commonly used by provider of medical care in the locality in which the care is furnished.

### LIMITATIONS AND EXCLUSIONS

The following exclusions apply to Emergency Accident and Sickness Medical Expense coverage.  This plan does not cover any loss caused by or resulting from:

1)  Pre-Existing Conditions, as defined below;
2)  Suicide or attempted suicide;
3)  Intentionally self-inflicted injuries;
4)  War, invasion, acts of foreign enemies, hostilities between nations (whether declared or not), civil war;
5)  Any loss starting while You are in the service of the armed forces of any country.  Orders to active military service for training purposes of two months or less will not constitute service in the armed forces;
6)  Piloting or learning to pilot or acting as a member of the crew of any aircraft;
7)  Mental or emotional disorders, unless hospitalized;
8)  Participation as a professional in athletics or underwater activities;
9)  Being under the influence of drugs or intoxicants unless prescribed by a Physician;
10) Commission or the attempt to commit a criminal act;
11) Participating in bodily contact sports; skydiving; hang gliding; parachuting; mountaineering; any sacs; bungee cord jumping; or speed contest;
12) Dental treatment except as a result of an Accidental Injury to sound, natural teeth within twelve (12) months of the Accidental Injury;
13) Any non-emergency treatment or surgery, routine physical examinations, hearing aids, eye glasses or contact lenses;
14) Pregnancy and childbirth (except for complications of pregnancy);
15) Confinement or treatment in a government Hospital; however, the U.S. government may recover or collect benefits under certain conditions;
16) Care or treatment which is not medically necessary;
17) Care or treatment for which compensation is payable under Workers' Compensation law, any Occupational Disease law, the 4800 Time Benefit plan or similar legislation;
18) Care or treatment that is payable under any insurance policy that does not require deductible and/or coinsurance payments by the Eligible Person;
19) Injury or Sickness when traveling against the advice of a Physician; and
20) Cosmetic surgery except for: reconstructive surgery incidental to or following surgery for trauma, or infection or other covered disease of the part of the body reconstructed, or to treat a congenital malformation of a child.

Slacks, Craig Documents Client226

## DEFINITIONS

"Accident" means a sudden, unexpected, unusual, specific event which occurs at an identifiable time and place, but shall also include exposure resulting from a mishap to a conveyance in which You are traveling.

"Accidental Injury" means Injury caused by an Accident (of external origin) occurring during a Covered Trip being the direct and independent cause in the loss.

"Eligible Person" means You, Your spouse, and Your unmarried dependent child(ren) who are under 19 years of age (24, if a full-time student). Dependent children include stepchildren, legally adopted or children who have been placed in Your home for adoption, and foster children. If a mental or physical handicap prevents an unmarried dependent child from self-support when he reaches the termination age, he/she may remain as an Eligible Person under this policy. Proof of such incapacity and dependency must be furnished to the Company within 31 days of the child's attainment of the termination age and not more frequently than annually thereafter. Coverage will continue as long as coverage remains in force and the dependent child is incapable of self-support.

"Emergency Treatment" means necessary medical treatment, including services and supplies, which must be performed during Your Trip due to the serious and acute nature of the Accidental Injury.

"Hospital" means a facility that:

a)  holds a valid license if it is required by the law;

b)  operates primarily for the care and treatment of sick or injured persons as in-patients;

c)  has a staff of one or more Physicians available at all times;

d)  provides 24-hour nursing service and has at least one registered professional nurse on duty or call;

e)  has organized diagnostic and surgical facilities, either on the premises or in facilities available to the hospital on a pre-arranged basis; and

f)  is not, except incidentally, a clinic, nursing home, rest home, or convalescent home for the aged, or similar institution.

"Individual Coverage Term" means the period of time beginning when the Eligible Person has been enrolled for coverage under the policy and for whom the required premium has been paid.

"Injury" means bodily injury caused by an Accident occurring while this policy is in force, and resulting directly and independently of all other causes in loss covered by the policy. The injury must be verified by a Physician.

"Insurance" means any one of the following types of policies or plans which provide benefits for Hospital confinement for You on Your effective date of coverage, and each policy or plan requires You to pay a deductible and/or portion of coinsurance: individual, group or blanket insurance plans; coverage under labor management trustee plans, union welfare plans, employer organization plans, employee benefit organizational plans, or other arrangements of benefits for persons of a group. Insurance does not include Medicare or Medicaid.

"Physician" means a licensed practitioner of medical, surgical or dental services acting within the scope of his/her license. The treating Physician may not be You, a Traveling Companion* or a Family Member**.

*  Traveling Companion is defined as a person who is sharing travel arrangements with You.

**  Family Member is defined as the Eligible Person's or Traveling Companion's legal or common law spouse, parent, legal guardian, step-parent, grandparent, grandchild, in law, natural or adopted child, step-child, brother, sister, step-brother, step-sister, aunt, uncle, niece or nephew, who resides in the United States or Canada.

"Pre-Existing Condition" means any Injury or Sickness which has been diagnosed by a legally qualified Physician, with consultation, advice or treatment occurring within twelve (12) months immediately prior to an Eligible Person's Individual Coverage Term. Pre-Existing Condition also means symptoms of a condition that would have led an ordinarily prudent person to seek diagnosis, care or treatment. Such an Injury or Sickness will continue to be a Pre-Existing condition until the earlier of:

(a)  the expiration of twelve (12) consecutive months beginning with the Individual Coverage Term, for which the Eligible Person has not received any medical care, consultation, diagnosis or treatment, or has not taken any prescribed drug or medicine on account of such condition; or

(b)  the expiration of twenty-four (24) consecutive months, beginning with the Individual Coverage Term.

"Sickness" means an illness or disease which is diagnosed or treated by a Physician after the effective date of this plan and while You are covered under this policy.

"The Company" means Virginia Surety Company, Inc..

"Trip" means any trip taken by an Eligible Person, to age 70 only, for which the required premium has been paid and which is 100 or more miles away from the Eligible Person's primary residence (if a student, the primary residence will be the parents' residence). Travel must be solely for business or for pleasure, not for the procurement of medical treatment or advice.

"You and Your" means an Eligible Person.

Stacks, Craig Documents Client227

## GENERAL PROVISIONS

**Legal Actions.** No legal action for a claim can be brought against us until sixty (60) days after we receive proof of loss. No legal action for a claim can be brought against us more than two (2) years after the time required for giving proof of loss.

**Controlling Law.** Any part of this Policy that conflicts with the state law where the Policy is issued is changed to meet the minimum requirements of that law.

**Misrepresentation and Fraud.** Coverage as to an Eligible Person shall be void if, whether before or after a loss, the Eligible Person had concealed or misrepresented any material fact or circumstance concerning this Policy or the subject thereof, or the interest of the Eligible Person therein, or if the Eligible Person commits fraud or false swearing in connection with any of the foregoing.

**Subrogation.** To the extent the Company pays for a loss suffered by an Eligible Person, the Company will take over the rights and remedies the Eligible Person had relating to the loss. This is known as subrogation. The Eligible Person must help the Company to preserve its rights against those responsible for the loss. This may involve signing any papers and taking any other steps the Company may reasonably require. If the Company takes over an Eligible Person's rights, the Eligible Person must sign an appropriate subrogation form supplied by the Company.

**Assignment.** This Policy is not assignable but benefits may be assigned.

**When an Eligible Person's coverage begins.** All coverage will take effect on the first day of the following month in which the required premium has been paid.

**When an Eligible Person's coverage ends.** An Eligible Person's coverage will end on the date which is the earliest of the following:

a)   the date the Policy is terminated;

b)   the date on which You no longer meet the definition of "Eligible Person;"

c)   the date coverage is ended by You; or

d)   the due date of a premium when due, subject to the Grace Period. The Company will allow a period of 31 days after the premium due date for payment of each premium after the first premium payment. The Policy is in force during this period. Termination of insurance of any Eligible Person will be without prejudice to any claim that begins before the date of termination.

**Notice of Claim.** Written notice of claim must be given to the Company or its designated representative within twenty (20) days after a covered loss first begins or as soon as reasonably possible. Notice should include the Eligible Person's name and Policy number. To obtain claim forms call 1-888-668-9035.

**Proof of Loss.** The Claimant must send the Company, or its designated representative, proof of loss within ninety (90) days after a covered loss occurs or as soon as reasonably possible.

**Payment of Claims.** The Company, or its designated representative, will pay the claim after receipt of acceptable proof of loss. All claims will be paid to the Eligible Person or the Eligible Person's estate. In the event the Eligible Person is a minor, incompetent or otherwise unable to give a valid release, the Company may make arrangements to pay claims to the Eligible Person's legal guardian, committee or other qualified representative.

**Physical Examination and Autopsy.** The Company, or its designated representative, at their own expense, have the right to have the Eligible Person examined as often as reasonably necessary while a claim is pending. The Company, or its designated representative, also has the right to have an autopsy made unless prohibited by law.

**NOTE:** Problems of distance, information and communication make it impossible for Virginia Surety Company, Inc., HealthExtras, or The Sidover Group, Inc. to assume any responsibility for the availability, quality, use or result of any emergency service. In all cases, You are still responsible for obtaining, using and paying for Your own required service of all types.

This insurance, under Policy HTP00137, is underwritten by: Virginia Surety Company, Inc., Executive Offices: 1000 Milwaukee Avenue, Glenview, IL 60025.

Policy terms and conditions are briefly outlined in this Plan Description. Complete provisions pertaining to this insurance are contained in the Master Policy on file with the trustee, Marine Bank, Springfield and HealthExtras. In the event of any conflict between this Plan Description and the Master Policy, the Policy will govern.

Stacks, Craig Documents Client228

## Medical Care Coordination Benefit

*Provided by HealthExtras*

Should You become permanently disabled, a medical care coordinator will be available to help evaluate care options and provide guidance and assistance in obtaining appropriate medical treatment.

---

For Customer Service or to cancel your enrollment in the Plan,
please call 1-888-668-9035.

Offer subject to change.  This plan may be modified,
suspended, cancelled or otherwise terminated with notice.

**Accidental Disability Plan** *from* **American Express**
2273 Research Boulevard, 2nd Floor ▪ Rockville, MD  20850
Customer Service 1-888-668-9035
Fax 1-800-963-4434

Stacks. Craig Documents Client229